IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

CHARLES HAWKINS-BEY,

    Petitioner,

vs.                                                No. 14-2275-STA-cgc

LEONARD ODDO,

Respondent.

---

ORDER GRANTING MOTION TO DISMISS
(ECF No. 16)
ORDER DENYING PETITION PURSUANT TO 28 U.S.C. § 2241
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

---

On April 17, 2014, Petitioner Charles Hawkins-Bey, Bureau of Prisons register number 03162-000, who is currently an inmate at the Federal Correctional Institution in Bruceton Mills, West Virginia ("FCI Hazelton"), filed a *pro se* application for writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Petition ("Pet."), ECF No. 1.) On April 18, 2014, Hawkins-Bey paid the filing fee. (ECF No. 3.) On April 3, 2015, the Court entered an order directing Respondent to file a response to the habeas petition. (Order, ECF No. 7.) On May 26, 2015, Respondent filed a motion to dismiss the petition. (Motion ("Mot.") to Dismiss, ECF No. 16.) On November 23, 2015, Petitioner filed a response to the motion to dismiss. (Response ("Resp."), ECF No. 19.)

I. BACKGROUND

The following facts appear in the record and exhibits[1]:

Petitioner is currently serving a life sentence imposed by the Superior Court of the District of Columbia for a murder he committed on October 14, 1988. (ECF No. 16-2, Exhibit A, BOP sentence monitoring computation data at PageID 77; ECF No. 16-3, Exhibit B, summary of Initial Parole Hearing, PageID 80-82.) On September 29, 1999, a Parole Commission hearing examiner conducted Petitioner's initial parole hearing. (ECF No. 16-3, Exhibit B at PageID 80-82.) The base point score calculated by the hearing examiner, along with the nature of Petitioner's crimes, indicated that parole should not be granted at that time, and the hearing examiner recommended that parole be denied. (*Id.*) The hearing examiner recommended that Petitioner be scheduled for a rehearing in 60 months – a departure from the usual guidelines for scheduling rehearings. (*Id.* at 81-82.) The Commission agreed with the hearing examiner's recommendation and, by notice of action dated January 3, 2000, denied parole and continued Petitioner for a rehearing in 60 months. (ECF No. 16-4, Exhibit C, PageID 83-84). The Commission explained this departure as follows:

> Your overall offense behavior was more serious than that reflected by your sentence in that it involved the following aggravated circumstances: You committed two especially brutal crimes while on escape status from a halfway house. In one of the crimes a disabled man was stabbed and robbed inside his own apartment and in the other, a woman was strangled to death.

(*Id.* at PageID 83.)

At the subsequent 2004 parole hearing, Respondent admits that the Parole Commission applied parole regulations promulgated since Petitioner had last been considered for parole[2] (the

---

[1]The Court has taken the facts from and has referenced the Respondent's statement of facts and exhibits because those exhibits are most legible and complete. Petitioner has not disputed Respondent's statement of facts or exhibits in his response to the motion to dismiss.

"2000 Guidelines"). In Petitioner's case, the Commission determined that he should serve 204-222 months before release. (ECF No. 16-5, Exhibit D at PageID 86; *but see* ECF No. 16-6, Exhibit E noting a range of 205-223 months at PageID 88.) It was further recommended that Petitioner be scheduled for a rehearing in 36 months. (*Id.*) The Commission's decision to deny parole and continue to a three-year reconsideration hearing in 2007 resulted in Petitioner serving outside the parole guidelines, and the Commission provided the following explanation:

> [Y]ou are a more serious risk than your base point score indicates because your offense behavior involved two separate crimes of high-level violence. In one, the victim was assaulted with a knife inside his home and in the second, a victim was strangled to death. The first victim was confined to bed due to illness and was half your size and weight at the time you attacked him. You then strangled to death a female victim only 1 week later. Both crimes occurred in the residence of the victims and occurred while you were on escape from a separate offense. Your multiple acts of violence against vulnerable victims that [sic] cannot be adequately captured by the base point score. The Commission believes that you remain a risk to commit further acts of violence and that your release to the community on parole would jeopardize the public safety.

(*Id.*)[3]

After conducting another parole hearing in 2007 as scheduled, the Commission again denied parole and continued Petitioner to a three-year reconsideration hearing, providing similar reasons to those given in 2004 for its departure from the parole guidelines. (ECF No. 16-7, Exhibit F at 90.)

At Petitioner's hearing in 2010, the Parole Commission applied the 1987 parole guidelines of the former D.C. Board of Parole (the "1987 Guidelines"). (ECF No. 16-8, Exhibit

---

[2]The application of these regulations resulted in a guideline range of months to be served before Petitioner should be granted parole.

[3]The Notice of Action issued by the Commission following this hearing did not explain the departure from the guidelines and a notice of action was issued in October 2007 to correct this error.

G at PageID 93.) These guidelines indicated Petitioner should be granted parole. (*Id.* at PageID 94.) The hearing examiner recommended that Petitioner be granted parole (*id.* at PageID 94-95), but, ultimately, the Commission disagreed with this recommendation and decided to deny parole and continue for a two-year reconsideration hearing. (ECF No. 16-9, Exhibit H at PageID 96.) Because this was a departure from the decision indicated by the parole guidelines, the Commission provided the following explanation:

> [A] departure from the guidelines at this consideration is found warranted because the Commission finds at this time that there is a reasonable probability that you would not obey the law if released and that your release will endanger the public. Therefore, the Commission is departing from the guideline to parole at this consideration and the normal rehearing schedule. Specifically, you are a more serious risk than shown by your point score because you have committed two violent crimes in which you have demonstrated exceptional cruelty to your victim. You committed both of these crimes inside the residence of your victims. During the first, you stabbed and attempted to rob a male victim that was lying down at the time and was half your size. Within 10 days, you had committed another crime in which you entered the home [of] a female victim and strangled her to death. Both of these crimes occurred after you had been granted parole through a work release program but prior to your parole becoming effective. The Commission recognizes that you have made a positive institutional adjustment. However, you also had made a positive adjustment while you were confined prior to your release to a work release program and you had impressed both correctional and parole officials with your adjustment at that time. Thus, the Commission is not convinced that the positive institutional adjustment you have demonstrated while serving this life sentence is indicative that you no longer remain a risk to commit additional violent crimes if you are released on parole at this time.

(*Id.*)

Following another parole rehearing in 2011 under the 1987 Guidelines, the Commission denied parole and continued Petitioner to a rehearing in one year. (ECF No. 16-10, Exhibit I at PageID 98.) The Commission provided the following explanation for its decision to depart from the guidelines:

4

> [T]he Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your point score based on the reasons cited in the Notice of Action dated February 25, 2010. Though you have continued to make a positive contribution to the prison industry system, the Commission believes that your history of violent crimes in the community, including two instant offenses in which you demonstrated exceptional cruelty toward your victims, is a greater indicator of your risk at this time. Also, you are a greater risk to commit violent crimes while under the influence of illegal substances and have not completed any significant substance abuse programs since your return to the Bureau of Prisons.

(*Id.*)

Following a rehearing in November 2012, at which the 1987 Guidelines were again applied to Petitioner's case, the Commission denied parole and continued Petitioner to a rehearing in one year. (ECF No. 16-11, Exhibit J at PageID 100.) The Commission cited the reasons for the previous decision and new misconduct in prison for its decision to depart from the guidelines. (*Id.*)

Following the September 5, 2013, rehearing by a Parole Commission hearing examiner, it was recommended that the Commission grant parole pursuant to the 1987 Guidelines. (ECF No. 16-12, Exhibit K at PageID 102-04.) By notice of action dated October 30, 2013, the Commission denied parole and continued Petitioner for a rehearing in 60 months. (ECF No. 16-13, Exhibit L at PageID 105). The Commission explained as follows:

> [T]he Commission finds there is a reasonable probability that you would not obey the law if released and your release would endanger the public safety. You are a more serious parole risk than shown by your grid score based on the extreme cruelty you committed in stabbing one victim and then strangling another to death 10 days later. Both of these crimes occurred after you had been released to a work release center prior to your parole becoming effective. The Commission finds that your extreme violence in the community is a stronger indicator of the risk that you present to the community than your prison conduct over the past 12 months. The Commission finds that you remain a danger to the community and should not be granted parole in the near future.

(*Id.*) The Commission cited the same reasons for its decision to depart from the rehearing guidelines and conduct the rehearing in 60 months. (*Id.*)

II. DISCUSSION

Hawkins-Bey's claims arise from the transfer of paroling authority from the D.C. Board of Parole to the Parole Commission under the 1997 Revitalization Act. *See Franklin v. D.C.*, 163 F.3d 625, 632 (D.C. Cir. 1998). The Act required the Parole Commission to exercise its authority "pursuant to the parole laws and regulations of the District of Columbia," but also gave the Parole Commission "exclusive authority to amend or supplement any regulation interpreting or implementing the parole laws of the District of Columbia with respect to felons." D.C. Code § 24-1231(a)(1), (c) (1999), recodified as D.C. Code § 24-131(a)(1), (c) (2001) (emphasis added). The Parole Commission adopted the D.C. Board of Parole's guidelines that were in effect from 1987 to 1998 ("1987 Guidelines"). The Parole Commission made select revisions to those guidelines under its "amend and supplement" authority. *See* 28 C.F.R. § 2.70 (1999).[4] The 1987 Guidelines are described in detail in *Ellis v. District of Columbia*, 84 F.3d 1413, 1415–17 (D.C. Cir. 1996). In brief, these guidelines required the calculation of a "total point score" showing the risk level presented by the prisoner. *Id.*, *see also* D.C. Code § 24.204.1, *et seq.* If the score was two points or fewer at the initial hearing, the prisoner would ordinarily be granted parole. *Id.* If the score was three or more points at the initial hearing, parole would ordinarily be denied and a rehearing scheduled. *Id.* At rehearings, a score of three (or fewer) points would indicate that parole should ordinarily be granted. *Id.* But the Board of Parole could depart from the guidelines' recommendation to grant or deny parole. *Id.* at 1416 n.2.

---

[4]The Parole Commission's revisions added additional risk factors to the prisoner's "total point score;" and replaced the annual rehearing guideline with variable ranges (*e.g.*, 12 to 18 months) based on the prisoner's point score.

In 2008, the District of Columbia District Court decided *Sellmon v. Reilly*, 551 F. Supp. 2d 66 (D.D.C. 2008). *Sellmon* held that the Parole Commission's application of the amended regulations to offenders who committed their crimes before the transfer of authority to the Parole Commission in 1998 might violate the *Ex Post Facto* Clause of the Constitution. *Sellmon*, 551 F. Supp. 2d at 66. The Parole Commission then promulgated the *Sellmon* Rule: the 1987 Guidelines should be applied to any offender who committed his crime between March 4, 1985 (the effective date of the 1987 Guidelines), and August 4, 1998 (the last day the D.C. Board exercised parole release authority). 74 Fed. Reg. 34688 (July 17, 2009) (interim rule, effective August 17, 2009) and 74 Fed. Reg. 58540 (November 13, 2009) (final rule) (codified in various sections at 28 C.F.R. Part 2).

III. HAWKINS-BEY'S CLAIMS

Petitioner Hawkins-Bey challenges the Parole Commission's denial of parole, contending the Parole Commission subjected him to the federal accountability standard which is not a factor under the 1987 Guidelines. (Petition, ECF No. 1 at PageID 6; Memorandum ("Mem.") in Support ("Supp."), ECF No. 1-2 at PageID 13-15.) Hawkins-Bey contends that, under the 1987 Guidelines, offense accountability or severity of the offense should not be considered by the Parole Commission. (*Id.*) He contends that the Parole Commission's determination violates the *Ex Post Facto* Clause of the Constitution by retroactively increasing his punishment. (*Id.*)

IV. ANALYSIS

    A.    The Parole Commission Properly Applied the 1987 Guidelines to Hawkins-Bey's Case

Under 18 U.S.C. § 4218(d), the Parole Commission's substantive decision to grant or deny parole is an action "committed to agency discretion" under the Administrative Procedure

Act, 5 U.S.C. §701(a)(2), and thus is insulated from judicial review. *Farkas v. United States*, 744 F.2d 37, 39 (6th Cir. 1984); *see also Stevens v. Quick*, 678 A.2d 28, 31 (D.C. 1996) (courts do not review the merits of Parole Commission's decision). The Court looks only for an abuse of discretion. As long as there is "a rational basis in the record for the Parole Commission's conclusions embodied in its statement of reasons," the parole decision should be affirmed. *Hackett v. United States Parole Comm'n*, 851 F.2d 127, 130 (6th Cir. 1987).

Hawkins-Bey claims that the USPC did not follow the 1987 Guidelines in denying him parole. (Mem. in Supp., ECF No. 1-2 at PageID 13-15.) That claim fails. First, the record clearly shows that since 2009, the Parole Commission has applied the 1987 Guidelines, not the federal parole rules, to calculate Hawkins-Bey's point score. (*Compare* ECF No. 16-8, Exhibit G at PageID 93; ECF No. 16-9, Exhibit H at PageID 96; ECF No. 16-10, Exhibit I at PageID 98; ECF No. 16-11, Exhibit J at PageID 100; ECF No. 16-12, Exhibit K at PageID 102-04; ECF No. 16-13, Exhibit L at PageID 105, with *Ellis*, 84 F.3d at 1416 (describing the application of the 1987 Guidelines). Second, the 1987 Guidelines give the Board of Parole or Parole Commission discretion to depart from the point score in denying parole. *See* D.C. Code § 24-404(a) ("[T]he Board *may* authorize [an inmate's] release on parole . . .") (emphasis added). In "unusual circumstances," the board can deny parole to an eligible candidate as long as it specifies its reasons in writing. 28 D.C. Mun. Regs. § 204.22 (1987); *Brown v. United States Parole Comm'n*, 02 Civ. 7639 (NRB), 2003 WL 194206, *4 (S.D.N.Y. Jan. 28, 2003) (citing 28 D.C. Mun. Regs. § 204.22 (1987)). The unusual cruelty of a crime and a reasonable probability that the prisoner's release would endanger the public qualify as unusual circumstances. *See Sellmon*, 551 F. Supp. 2d at 95; *White v. Hyman*, 647 A.2d 1175, 1179 (D.C. 1994). Here, after a previous release to a work release program, Hawkins-Bey stabbed a bed-ridden, disabled victim and,

within ten days, strangled another victim to death. (ECF No. 16-13, Exhibit L at PageID 105.) Despite Hawkins-Bey's positive adjustment during confinement to prison, his unusual cruelty to his victims and continued violent conduct while on work release were unusual circumstances allowing the parole board to deny him parole under the 1987 Guidelines. The Parole Commission concluded that there was a "reasonable probability that [Hawkins-Bey] would not obey the law if released and [his] release would endanger the public safety." *Id.* Therefore, the denial of parole was warranted despite Hawkins-Bey's low point score.

Third, the 1987 Guidelines permit the board to schedule rehearings outside of the ordinary one-year requirement. The regulations state that "[w]hen the [b]oard denies parole and orders reconsideration for a person serving a maximum sentence of five (5) years or more, reconsideration shall ordinarily occur within twelve (12) months." D.C. Mun. Regs. 28, § 104.2 (1987). The board, however, "may order a parole reconsideration date it determines to be appropriate." *See White*, 647 A.2d at 1179 (upholding board's authority to order a hearing after five years based on its determination of prisoner's impact on public safety) (emphasis added); *see also Hall v. Henderson*, 672 A.2d 1047, 1054 (D.C. 1996) (upholding decisions by the board to override the annual rehearing guideline); *Jones v. Braxton*, 647 A.2d 1116, 1117 (D.C. 1994). In Hawkins-Bey' case, the Parole Commission deviated from the annual rehearing guideline because he was a significant risk to the community. (ECF No. 16-13, Exhibit L at PageID 105.) The USPC had discretion to do so under the 1987 Guidelines.

B. Hawkins-Bey's *Ex Post Facto* Claim Lacks a Legal Foundation

Hawkins-Bey claims that the Parole Commission's departure from the 1987 Guidelines violates the Constitution's *Ex Post Facto* Clause. (Pet., ECF No. 1 at PageID 6.) This claim is without a legal foundation. First, the Parole Commission followed the *Sellmon* Rule and applied

9

the 1987 Guidelines to Hawkins-Bey's parole decision. Second, Hawkins-Bey has no legal right to be released on parole because of his low point score. In other words, the Parole Commission has discretion to deviate from the point score in certain circumstances. As explained above, the 1987 Guidelines use discretionary language. D.C. Code § 24-404(a). A prisoner with a low point score shall be granted parole *unless* the Board, *in its discretion*, "believes there is some other reason for not granting him parole." *See Ellis*, 84 F.3d at 1419 (emphasis added). In *Ellis*, the Board overrode a favorable point score because of the prisoner's cruelty to his victims and aggressive tendencies. *Id.*; *see also McRae v. Hyman*, 667 A.2d 1356, 1361 (D.D. 1995) (denial of parole affirmed, despite a favorable point score, of a repeat violent offender). No D.C. prisoner can justifiably claim that the board is required to parole him, whatever his point score. *See Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 9–10 (1979) ("[T]here is no set of facts which mandate a [parole release] decision favorable to the individual."). The Parole Commission appropriately exercised its discretion to deny Hawkins-Bey's parole and specified the reasons for its decision. (ECF No. 16-13, Exhibit L at PageID 105.)

V. CONCLUSION

The Parole Commission acted within its statutory and regulatory authority to deny Hawkins-Bey parole and schedule his rehearing for a date five years later under the 1987 Guidelines. The record fails to support Hawkins-Bey's claims that the Parole Commission applied improper guidelines or violated the *Ex Post Facto* Clause. Respondent's motion to dismiss the petition (Mot., ECF No. 16) is GRANTED.

VI.     APPEAL ISSUES

Federal prisoners who file petitions pursuant to 28 U.S.C. § 2241 challenging their federal custody need not obtain certificates of appealability under 28 U.S.C. § 2253(c)(1). *Durham v. United States Parole Comm'n*, 306 F.3d 225, 229 (6th Cir. 2009); *Melton v. Hemingway*, 40 F. App'x 44, 45 (6th Cir. 2002) ("a federal prisoner seeking relief under § 2241 is not required to get a certificate of appealability as a condition to obtaining review of the denial of his petition"); *see also Witham v. United States*, 355 F.3d 501, 504 (6th Cir. 2004) (28 U.S.C. § 2253 "does not require a certificate of appealability for appeals from denials of relief in cases properly brought under § 2241, where detention is pursuant to federal process").

A habeas petitioner seeking to appeal must pay the $505 filing fee required by 28 U.S.C. §§ 1913 and 1917. To appeal *in forma pauperis* in a habeas case under 28 U.S.C. § 2241, the petitioner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Kincade v. Sparkman*, 117 F.3d 949, 952 (6th Cir. 1997). Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the petitioner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(4)-(5).

In this case, because Petitioner is clearly not entitled to relief, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED. If Petitioner files a notice of appeal, he must also pay the full $505

appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the United States Court of Appeals for the Sixth Circuit within thirty (30) days.

Entered this 10th day of February 2016.

    **s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE